## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LAWRENCE KASKE,

                    Petitioner,                              Case Number: 05-CV-72675

v.                                                           HON. LAWRENCE P. ZATKOFF

KURT JONES,

                    Respondent.

_____/

### OPINION AND ORDER DENYING
### PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Lawrence Kaske, a state prisoner incarcerated at the Kinross Correctional Facility

in Kincheloe, Michigan, has filed a petition for a writ of habeas corpus.  Petitioner challenges his

conviction for solicitation to commit murder.  For the reasons that follow, the Court denies the

petition.

I.       Facts

The Michigan Court of Appeals summarized the facts leading to Petitioner's conviction as

follows:

> Defendant contacted his friend Michael Banaszak in search of a "hit man" to kill
> Robert Tanner, who was dating defendant's former girlfriend.  Banaszak went to the
> police and the police arranged for an undercover officer to pose as a "hit man."  On
> March 11, 1997, the police recorded two telephone conversations, during which
> Banaszak informed defendant that he had contacted a "hit man" that was available
> to meet with defendant at a local hotel.  Banaszak told defendant that the "hit man"
> would need $100 "good faith money" as down payment and that his total fee would
> be approximately $1,500.  Defendant spoke with the undercover officer posing as the

"hit man" and arranged to meet him later that evening.  Defendant did not show up for that initial

meeting.  The following day, defendant contacted Banaszak and explained that he missed the

meeting because he had gone to the wrong hotel.  During a tape recorded telephone conversation

on March 12, 1997, Banaszak informed defendant that the "hit man" was still willing to work with

defendant despite nervousness caused by defendant's failure to show up for the first meeting. Defendant told Banaszak that he desired to arrange another meeting. On March 13, 1997, the police recorded another conversation, during which Banaszak informed defendant the "hit man" was willing to meet that afternoon in a parking lot. Defendant arrived at the parking lot at the specified time and entered the supposed "hit man's" vehicle. According to the ensuing tape recorded conversation, defendant stated that he could not provide a "perfect description" of Tanner, but did say that Tanner was in his late thirties. Defendant also provided Tanner's address and described Tanner's vehicles and the times he suspected Tanner would be alone at home. Defendant requested that the "hit man" "dust," "waste," and "kill" Tanner and gave the undercover officer $133. Defendant was then arrested.

People v. Kaske, No. 208739, slip op. at 2.

## II.   Procedural History

Following a jury trial in Bay County Circuit Court, Petitioner was convicted of solicitation to commit murder. On November 24, 1997, he was sentenced to twenty-five to fifty years imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I.    Defendant's conviction must be reversed because he was entrapped as a matter of law, and the trial court clearly erred in ruling otherwise.

II.   The trial court abused its discretion in permitting the jury to rely upon transcripts of tape recorded conversations, which transcripts were never authenticated and constituted inadmissible hearsay.

III.  The trial court erred in instructing the jury, over defense objection, on the requirements for renunciation as a defense to solicitation, where the defense did not assert a renunciation defense.

IV.   Manifest injustice resulted when the jury was incorrectly informed that the penalty for solicitation of murder is five years' imprisonment, when indeed the maximum penalty is life imprisonment.

V.    The trial court abused its discretion in imposing a sentence of 25 to 50 years' imprisonment on this 59-year-old, otherwise upstanding and law abiding citizen, for an offense which posed no real threat of harm.

2

VI.   The judgment of sentence must be corrected, because it erroneously states that defendant was convicted of first degree premeditated murder.

Petitioner also attempted to file a supplemental *pro se* brief. The brief was not accepted for filing.

The Michigan Court of Appeals affirmed Petitioner's conviction, but remanded for correction of the judgment of sentence, which incorrectly stated that he was convicted of first-degree murder. People v. Kaske, No. 208739 (Mich. Ct. App. July 18, 2000).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals, and the following additional claims:

I.   Jurisdiction is conferred upon a court through statute cited in indictment of information brought by a defendant.

II.   Defendant-Appellant was denied an arraignment: due process violation; court lacked jurisdiction.

III.   Outrageous government behavior by the police and their agent.

IV.   Recordings presented by prosecution failed to meet the McMillan standard as accepted by the U.S. Supreme Court.

V.   Prosecutorial Misconduct.

VI.   Petitioner attempted to file a Supplemental brief to the Court of Appeals but the brief was not accepted for filing due to the presence of overlapping issues between the initial brief and the supplemental brief.

VII.   Trial court erroneously instructed jury on murder in the second degree as a substantive offense on an inchoate crime.

VIII.   Following closing arguments and without notice, trial court judge instructed the jury on the defense of duress, denying the defendant the opportunity to object or prepare an argument.

IX.   Defendant was prejudiced by verdict form.

X.   Solicitation to commit murder in the second degree cannot logically exist.

3

The Michigan Supreme Court denied leave to appeal. People v. Kaske, No. 117588 (Mich. Jan. 30, 2001).

Following the remand for correction of the judgment of sentence, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, presenting the following claims:

I.   When instructions of an offense include various degrees, the degree of the offense must be included in the judgment.

II.  When the verdict of the jury does not clearly find for a degree of guilt in the higher, it is proper that the lesser degree is the limit of which trial court may enter in a judgment of sentence.

III. Trial court must amend the judgment of sentence, fully and accurately, to meet the statute citation as ordered by the Court of Appeals and enter the degree as satisfies the verdict of the jury and accepted by trial court as so spoken.

The Michigan Court of Appeals, in lieu of granting leave to appeal, remanded the matter to the circuit court for the limited purpose of correcting the judgment of sentence to accurately reflect the conviction of solicitation of murder and the correct statutory citation. People v. Kaske, No. 230547 (Mich. Ct. App. May 4, 2001).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, presenting the following claims:

I.   When instructions of an offense include various degrees, the degree of the offense must be included in the judgment of sentence.

II.  When the verdict of the jury does not clearly find for a degree of guilt in the higher, it is proper that the lesser degree is the limit of which trial court may enter in a judgment of sentence.

III. Trial court must amend the judgment of sentence, fully and accurately, to meet the statute citation as ordered by the Court of Appeals and enter the degree as satisfies the verdict of the jury and accepted by trial court as so spoken.

IV.  The Court of Appeals erred when it issued an order in lieu of granting leave to appeal.

4

V.      Solicitation to commit murder in the second degree cannot logically exist and is, therefore, a nonexistent offense.

The Michigan Supreme Court denied leave to appeal. People v. Kaske, No. 119516 (Mich. Nov. 30, 2001).

Petitioner filed a motion for superintending control in the Michigan Court of Appeals asking that the trial court be ordered to amend his judgment of sentence to state that he was convicted of solicitation to commit murder in the second-degree. The Michigan Court of Appeals denied the complaint. People v. Kaske, No. 241261 (Mich. Ct. App. Dec. 13, 2002). Petitioner filed a complaint for superintending control in the Michigan Supreme Court, which was also denied. People v. Kaske, No. 123054 (Mich. May 30, 2003).

Petitioner filed a motion for relief from judgment in the trial court and motion for a hearing under People v. Ginther, and presented the following claims:

I.      Defendant was denied his Sixth Amendment right of due process to a fair trial by the ineffectiveness of defense counsel Robert Dunn.

II.     Defendant was denied his Sixth Amendment right of due process to a fair trial by the ineffectiveness of defense counsel Stevens Jacobs.

III.    Defendant was denied his Sixth Amendment right of effective assistance of appellate counsel Desiree Ferguson.

IV.     Defendant was denied his Sixth Amendment right of effective assistance of appellate counsel Douglas Mullkoff.

V.      False document produced by defense counsel misleading to the court and denial of defendant's right of due process; trial court never obtained personal jurisdiction to proceed to trial.

VI.     Altered tape recordings denied defendant his right of due process to a fair trial; actual innocence proven by tainted evidence.

VII.    Trial court, sua sponte, instructed the jury on affirmative defense of duress; stated that defendant requested that instruction and admitted committing an alleged offense;

5

conflicting instructions; presumption of guilt; invasion into province of jury; violation of due process to a fair trial.

VIII.   Defendant was prejudiced by verdict form which did not allow jury to determine by degree of offenses instructed upon; ambiguous verdict; denial of due process to a fair trial.

IX.   Solicitation to commit murder in the second degree cannot logically exist and is, therefore, a non-existent offense.

The trial court denied the motion for relief from judgment and for <u>Ginther</u> hearing. <u>People v. Kaske</u>, No. 97-1298-FC-B (Bay County Circuit Court Jan. 13, 2004).

Petitioner filed applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court, presenting the same claims presented to the trial court in the motion for relief from judgment. Both state appellate courts denied leave to appeal. <u>People v. Kaske</u>, No. 255528 (Mich. Ct. App. Dec. 16, 2004); <u>People v. Kaske</u>, No. 127724 (Mich. May 31, 2005).

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the following claims:

I.   Petitioner is unconstitutionally incarcerated under a charge not brought against him and of a degree not found by a jury based upon erroneous information in a presentence report which was objected to at sentencing, where said erroneous offense was allowed to stand by the Michigan Supreme Court and the Michigan Court of Appeals.

II.   Petitioner was denied his Sixth Amendment right of due process to a fair trial by the ineffectiveness of defense counsel Robert Dunn.

III.   Petitioner was denied his Sixth Amendment right of due process to a fair trial by the ineffectiveness of defense counsel Steven Jacobs.

IV.   Defendant was denied his Sixth Amendment right of effective assistance of appellate counsel Desiree Ferguson.

V.   Defendant was denied his Sixth Amendment right of effective assistance of appellate counsel Douglas Mullkoff.

6

VI.    Defense counsel prepared and submitted a document, stated and certified to the correctness of statements contained in it which were known to be false, and was supported by prosecution's failure to notify the court that the cited felony information did not exist at that time which resulted in Petitioner being denied his Sixth Amendment right to arraignment on charges and enter an intelligent plea in open court and Petitioner's Sixth Amendment right to be represented by counsel at a critical stage of the proceedings; trial court failed to obtain jurisdiction to proceed to trial.

VII.   Altered tape recordings denied Petitioner his right of due process to a fair trial; actual innocence proven by tainted evidence.

VIII.  Trial court erred instruction the jury, over defense objection, on the requirements for renunciation as a defense to solicitation, where the defense did not assert a renunciation defense, thus denying Petitioner his right of due process to a fair trial.

IX.    Trial court, sua sponte, instructed the jury on affirmative defense of duress and, in so doing, directed a verdict of guilty thus denying Petitioner his Fifth, Sixth and Fourteenth Amendment rights to due process.

X.     Petitioner was prejudiced by verdict form which did not allow the jury to determine the degree of the offenses instructed upon; ambiguous verdict; denial of due process to a fair trial.

XI.    Solicitation to commit murder in the second-degree cannot logically exist and is, therefore, a nonexistent offense.

## III.    Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable

> determination of the facts in light of the evidence presented in the
> State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a

petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law.  Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998).

Additionally, this Court must presume the correctness of state court factual determinations.  28

U.S.C. § 2254(e)(1)[1]; *see also* Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give

complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to"

clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly
> established precedent if the state court applies a rule that contradicts the governing
> law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established
> precedent if the state court confronts a set of facts that are materially
> indistinguishable from a decision of this Court and nevertheless arrives at a result
> different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States

Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the

"unreasonable application" clause when "a state-court decision unreasonably applies the law of this

---

[1]  28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State
> court, a determination of a factual issue made by a State court shall
> be presumed to be correct.

Court to the facts of a prisoner's case." Id. at 409.  The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

Id. at 409-11.

## IV.   Analysis

### A.   Judgment of Sentence

In his first claim for habeas corpus relief, Petitioner argues that the judgment of sentence incorrectly states that he was convicted of "solicitation to commit murder," when it should state that he was convicted of "solicitation to commit second-degree murder."

On direct review, Petitioner argued the need for the judgment of sentence to be corrected because it stated that he was convicted of "Homicide Murder 1ˢᵗ Deg-Premeditated."  The Michigan Court of Appeals held that because Petitioner was actually convicted of solicitation to commit murder, the judgment of sentence should be corrected to reflect that conviction and remanded the matter to the trial court for that purpose.  Kaske, slip op. at 6-7.  Petitioner acknowledges that the judgment of sentence has now been corrected to reflect a conviction for solicitation of murder.  He argues, however, that the amendment is insufficient and should reflect that he was convicted of solicitation of second-degree murder.

It is well-established that "'federal habeas corpus review does not lie for errors of state law.'"

9

Estelle v. McGuire, 502 U.S. 62, 67 (1991), *quoting* Louis v. Jeffers, 497 U.S. 764, 780 (1990). The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." Long v. Smith, 663 F.2d 22, 23 (6th Cir. 1981).

Under Michigan law, the crime of solicitation to commit murder is not broken down into degrees, and the penalty is not based upon any finding regarding the degree of the crime. Mich. Comp. Laws 750.157b(2); People v. Jerrett, 1999 WL 33444331 *2 (Mich. Ct. App. May 18, 1999). Therefore, Petitioner has failed to show that his judgment of sentence is incorrect and has failed to show that the Michigan Court of Appeals' decision directing the judgment of sentence to reflect Petitioner's conviction for "solicitation of murder" was contrary to or an unreasonable application of Supreme Court precedent. Nor has he shown that he was deprived of his right to counsel when the judgment of sentence was amended. The correction of the judgment of sentence did not change Petitioner's sentence and was a ministerial act which did not require the presence of counsel.

### B.    Jury Instruction Claim

Petitioner argues, in his eighth claim for habeas corpus relief, that the trial court erred in giving an instruction regarding renunciation because it amounted to a "self-incriminating defense" and it was given over defense objection.

Generally, a claim that a state trial judge gave erroneous jury instructions is not cognizable in a federal habeas action unless the instruction "'so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991), *quoting* Cupp v. Naughten, 414 U.S. 141, 147 (1973). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional]

10

right.'" Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  Further, "[i]t is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record."  Estelle v. McGuire, 502 U.S. 62, 72 (1991), *quoting* Cupp v. Naughten, 414 U.S. 141, 147 (1973).

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, held, in pertinent part:

> Even if somewhat imperfect, jury instructions do not create error if they fairly present the issues to be tried and sufficiently protect the defendant's rights. . . . "Jury instructions must include all the elements of the charged offense and must not exclude material issues, defenses, and theories that are supported by the evidence." People v. Crawford, 232 Mich. App. 608, 619; 591 N.W.2d 669 (1998), citing [People v. Piper, 223 Mich. App. 642, 648; 567 N.W.2d 483 (1997)]. An instruction on a defense may be given even when it is not requested by the defendant where defense counsel emphasized the defense during trial. . . . In the present case, the defense theory was the defendant acted under duress when he contacted the "hit man" and that he never intended that Tanner actually be killed. The evidence at trial suggests defendant spoke with Banaszak regarding his intent to have Tanner killed and the price the "hit man" would charge. Defendant spoke directly to the undercover officer posing as the "hit man" and arranged a meeting. Defendant testified that his reason for not showing up for the meeting was that "reality was startin' to kick in." Defendant claimed he subsequently met and dealt with the "hit man" out of fear, not an intention that Tanner be killed. The evidence supports a renunciation instruction and the instruction given by the trial court was appropriate. . . . Furthermore, defendant's claim that the renunciation defense instruction was error because it confused the jury regarding the burden of proof lacks merit. The jury was properly instructed regarding the prosecution's burden of proving defendant's guilt and the renunciation instruction merely provided that defendant must show renunciation by a preoponderance of the evidence in order for the defense to apply.

Kaske, slip op. at 5.

Petitioner has failed to show that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent or that the jury instruction regarding renunciation, taken in context, shifted the burden of proof.  Accordingly, he is not entitled to habeas corpus relief with respect to this claim.

## C.      Procedural Default

Respondent argues that Petitioner's remaining claims are procedurally defaulted because they were presented for the first time on collateral review and the state courts relied upon a clearly established state procedural rule in denying his claims.

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, Coleman, 501 U.S. at 752, if he fails to present an issue to a state appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict.  United States v. Frady, 456 U.S. 152, 167-69 (1982); Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996).  Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." Rust, 17 F.3d at 162; see Murray v. Carrier, 477 U.S. 478, 496 (1986); Dretke v. Haley, 541 U.S. 386, 393 (2004).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule.  Williams v. Coyle, 260 F.3d 684, 693 (6th Cir. 2001), cert. denied, 536 U.S. 947 (2002); see also Warner v. United States, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last state court from which the petitioner sought review must have invoked the

12

state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. <u>Coleman</u>, 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground[] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." <u>Simpson</u>, 94 F.3d at 202. Whether the independent state ground is adequate to support the judgment is itself a federal question. <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002).

If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. <u>Rust</u>, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).

Respondent argues that Petitioner's II-VII, IX, and XI habeas claims were presented for the first time on collateral review in state court and, therefore, are procedurally defaulted. The Michigan Supreme Court denied leave to appeal on the ground that Petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." <u>Kaske</u>, No. 127724. The Michigan Court of Appeals denied leave to appeal for the same reason. <u>Kaske</u>, No. 255528. Respondent argues that the Michigan appellate courts' reliance on M.C.R. 6.508(D) establishes procedural default.

M.C.R. 6.508(D) applies to motions for relief from judgment, and states, in relevant part:

(D) Entitlement to Relief. The defendant has the burden of establishing entitlement

to the relief requested.  The court may not grant relief to the defendant if the motion

(1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;

(2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief . . .

M.C.R. 6.508(D).

"Although 6.508(D)(1), (2), and (3) list specific procedural grounds for denying a defendant relief from judgment, these procedural grounds are not the exclusive grounds for which a court may deny relief pursuant to M.C.R. 6.508(D)."  Abela v. Martin, 380 F.3d 915, 922 (6th Cir. 2004). Thus, where the Michigan Supreme Court references only M.C.R. 6.508(D) generally as a basis for denying leave to appeal, that reference, without more, is insufficient to establish that the court denied leave to appeal based upon a procedural ground.  Id.  However, where other "clarifying indicators" clearly demonstrate the state court's intention to invoke an "independent and adequate state procedural rule" by its general reference to 6.508(D), a federal court may determine that federal habeas review is barred.  Id. at 923-924.  Other "clarifying indicators" include where state courts below the supreme court specifically invoke a procedural bar.  Id.  In this case, the trial court denied Petitioner's claims VII, and IX-XI, because they already had been presented and denied on direct review.   The trial court's reliance on res judicata to deny these claims does not amount to a

14

procedural default, and the Court will address the merits of these claims below.  Lundgren v. Mitchell, 440 F.3d 754, 777 (6th Cir. 2006).  With respect to the claims enumerated as II, III, and VI, the trial court specifically invoked Mich. Ct. R. 6.508(D)(3), in denying relief on these claims. Mich. Ct. R. 6.508(D)(3) is a firmly established and regularly followed state ground precluding subsequent federal habeas review absent a showing of cause and prejudice.  Luberda v. Trippett, 211 F.3d 1004, 1007 (6th Cir. 2000), citing Rogers v. Howes, 144 F.3d 990 (6th Cir. 1998).  Thus, the Court finds that the Michigan Supreme Court's reliance on M.C.R. 6.508(D) is sufficient to establish procedural default with respect to these claims.

Finally, Petitioner's claims IV and V, alleging ineffective assistance of appellate counsel were asserted as cause to excuse Petitioner's procedural default.  Appellate counsel cannot be expected to assert his or her own ineffectiveness on appeal.  Therefore, Petitioner's asserted ineffective assistance of appellate counsel at the first opportunity to do so, on collateral review, and these claims are not defaulted.  See Whiting v. Burt, 395 F.3d 602, 610 n.6 (6th Cir. 2005).

The Court now considers whether Petitioner's claims of ineffective assistance of appellate counsel excuse his default for the following claims: (i) ineffective assistance of defense counsel Robert Dunn, (ii) ineffective assistance of defense counsel Steven Jacobs; and (iii) felony information was incorrect resulting in deprivation of Petitioner's right to arraignment, right to counsel, and failure of trial court to obtain jurisdiction.

The Supreme Court has held that "cause" under the cause and prejudice standard must be "something external to the petitioner, something that cannot be fairly attributed to him."  Coleman, 501 U.S. at 753.  The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error' . . . . Attorney error that constitutes

15

ineffective assistance of counsel is cause, however." Id. at 753-54 (internal citations omitted).

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Strickland, 466 U.S. at 688; additional internal quotations omitted).  However, when assessing counsel's performance, the reviewing court should afford counsel great deference. Strickland, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." Id.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. Jones v. Barnes, 463 U.S. 745, 754 (1983).  The Court further stated:

For judges to second-guess reasonable professional judgments and impose on

> appointed counsel a duty to raise every "colorable" claim suggested by a client
> would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the
> Constitution or our interpretation of that document requires such a standard.

Id. at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly

left to the sound professional judgment of counsel." United States v. Perry, 908 F.2d 56, 59 (6th Cir.

1990).

The trial court, applying the Jones v. Barnes standard, held that Petitioner failed to show that

his appellate attorney was ineffective.  The trial court found that appellate counsel raised numerous

issues on appeal and that the issues raised were significant.  Kaske, slip op. at 7.  The trial court

proceeded to find that Petitioner failed to overcome the presumption that either of his trial attorneys

rendered effective assistance.  Further, the trial court held that Petitioner failed to show that he was

prejudiced by counsel's alleged errors.  Id.  In addition, the court held that Petitioner's claims

regarding false documents were meritless.  Therefore, the court concluded, he failed to establish that

appellate counsel was ineffective in not raising these claims.  The trial court's reasoning was not

contrary to or an unreasonable application of Strickland or Barnes.  Petitioner has failed to establish

that his appellate counsel was ineffective in failing to raise these issues on direct appeal.  He,

therefore, cannot show that the trial court's decision was contrary to or an unreasonable application

of Supreme Court precedent.

Thus, Petitioner has failed to establish cause to excuse his procedural default, and his claims

are barred unless he can establish that a constitutional error resulted in a fundamental miscarriage

of justice.  Schlup v. Delo, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural

default to a petitioner's innocence.  Id..  at 321.  Thus, the petitioner must assert a constitutional

error along with a claim of innocence.  To make a showing of actual innocence, "a petitioner must

17

show that it is more likely than not that no reasonable juror would have found the petitioner guilty

beyond a reasonable doubt." Id. at 327. The Court further explained this standard as follows:

> The . . . standard is intended to focus the inquiry on actual innocence. In assessing
> the adequacy of petitioner's showing, therefore, the district court is not bound by the
> rules of admissibility that would govern at trial. Instead, the emphasis on "actual
> innocence" allows the reviewing tribunal to consider the probative force of relevant
> evidence that was either excluded or unavailable at trial. . . . The habeas court must
> make its determination concerning the petitioner's innocence in light of all the
> evidence, including . . . evidence tenably claimed to have been wrongly excluded or
> to have become available only after trial.
>
> . . . .
>
> . . . [A]ctual innocence does not merely require a showing that a reasonable doubt
> exists in the light of the new evidence, but rather that no reasonable juror would have
> found the defendant guilty. It is not the district court's independent judgment as to
> whether reasonable doubt exists that the standard addresses; rather the standard
> requires the district court to make a probabilistic determination about what
> reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the
> threshold requirement unless he persuades the district court that, in light of the new
> evidence, no juror, acting reasonably, would have voted to find him guilty beyond
> a reasonable doubt.

Id. (internal quotation omitted).

Petitioner fails to present new, reliable evidence in light of which no reasonable juror would

have found him guilty. Therefore, Petitioner's claims II, III, and VI are barred from consideration

by procedural default.

### D.    Tape Recording

Petitioner alleges that the admission of altered tape recordings violated his right to a fair trial.

The trial court allowed the jury to hear taped conversations between Petitioner, Michael Banaszak

and police sergeant Gregory Kilbourn, who was posing as a hit man. The trial court also allowed

the jury to use transcripts of the tape recorded conversations as aids while listening to the tapes

during trial. Petitioner argues that the accuracy of the transcripts was never established.

18

"'[F]ederal habeas corpus review does not lie for errors of state law.'" Estelle v. McGuire, 502 U.S. 62, 67 (1991), *quoting* Louis v. Jeffers, 497 U.S. 764, 780 (1990). "Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994), *citing* Fuson v. Jago, 773 F.2d 55, 59 (6th Cir. 1985). "When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003). The "category of infractions" that violate fundamental fairness have been defined "very narrowly." Id. "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Id. (internal quotation omitted).

Petitioner has failed to establish that the state court's decision to admit the tape recordings was so egregious as to violate due process. Petitioner's allegations that the tape recordings were altered, are based, at least in part, on his experience as one who is "professionally trained and well-experienced in the field of voice intercept/transcription." Petition at p. 40. Petitioner's conclusory argument, based upon his own purported expertise, that the recordings were altered fails to show that the trial court violated his constitutional rights in admitting the recordings. Accordingly, the Court denies habeas relief.

### E.     Jury Instruction Regarding Duress

Next, Petitioner argues that the trial court erred in instructing the jury on the defense of duress. The trial court, in denying Petitioner's motion for relief from judgment, held that the instructions for renunciation and duress were intertwined and the reasons justifying the renunciation instruction similarly justified the duress instruction.

19

As discussed above, a claim that a state trial judge gave erroneous jury instructions is not cognizable in a federal habeas action unless the instruction "'so infected the entire trial that the resulting conviction violates due process.'"  Estelle v. McGuire, 502 U.S. 62, 72 (1991), *quoting* Cupp v. Naughten, 414 U.S. 141, 147 (1973).  In this case, Petitioner's own testimony that he was fearful that the "hitman" would harm him if he backed out from the crime supported a duress defense.  Therefore, the Court finds that this instruction did not violate Petitioner's right to due process.

**F.    Verdict Form and Solicitation to Commit Second-Degree Murder**

Finally, Petitioner argues that the verdict form was improper because it did not require the jury to differentiate between solicitation to commit first and second-degree murder.  Petitioner further argues that the verdict cannot stand because the jury was instructed on solicitation to commit second-degree murder and no such crime exists under Michigan law.  The Michigan Court of Appeals held that the statute under which Petitioner was convicted makes no distinction between solicitation of first- and second-degree murder.  Kaske, No. 230547, slip op. at 1.  Therefore, the verdict form was not incorrect in failing to specify a degree.

Under Michigan law, the crime of solicitation to commit murder requires premeditation and deliberation.  People v. Vandelinder, 192 Mich. App 447, 450 (Mich. Ct. App. 1992).  The crime of second-degree murder does not.  Id.  Thus, Michigan courts have held that solicitation to commit second-degree murder is inconsistent in that second-degree murder does not require premeditation and deliberation.  In this case, while the jury was instructed on solicitation to commit second-degree murder, they were also specifically and clearly instructed as to the intent necessary for a finding of solicitation.  Therefore, the jury instructions, considered as a whole, did not allow a jury to find Petitioner guilty without a specific finding of intent.  Therefore, Petitioner has failed to show that

20

his right to a fair trial was violated by the court's instruction in this regard.

**V.      Conclusion**

Petitioner has not established that he is in the State of Michigan's custody in violation of the

Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.



s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  April 19, 2007




CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record
by electronic or U.S. mail on April 19, 2007.

s/Marie E. Verlinde
Case Manager
(810) 984-3290